UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD AARON MARTIN, | Case No. 17-cv-06263-YGR (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION FOR SUMMARY** |
| | **JUDGMENT** |
| Z. BASNETT, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Floyd Aaron Martin, a state prisoner currently incarcerated at the California State Prison - Los Angeles County, has filed a *pro se* civil rights action under 42 U.S.C. § 1983.  The operative complaint in this action is the second amended complaint ("SAC"), in which Plaintiff alleged constitutional rights violations at Pelican Bay State Prison ("PBSP") where he was previously incarcerated.  Dkt. 11 at 4.[1]  In his SAC, Plaintiff has named the following Defendants at PBSP: Sergeants Z. Basnett, K. Price, and S. Wright; Lieutenant Basso; Correctional Officers E. Burr, E. Contreras, R. Scruggs, D. Trone,[2] J. Pena, Kauffman, and Chavez; and John Doe.  *Id.* at 2. Plaintiff seeks declaratory relief as well as monetary and punitive damages.  *Id.* at 11.

In an Order dated April 10, 2019, the Court found that the SAC stated cognizable claims of retaliation, deliberate indifference, withholding mail, and violations of due process stemming from incidents that occurred from December 2016 through February 2017 against Defendants Basnett, Wright, Basso, Burr, Contreras, Scruggs, Trone, Kauffman, and Chavez (hereinafter "Defendants").  Dkt. 12 at 2-5.  The Court dismissed Plaintiff's remaining claims, including claims against Defendants Contreras, Pena, and Price relating to the October 10, 2017 "second cell extraction."  *Id.* at 4.  The dismissal was without prejudice to Plaintiff bringing them in separate

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[2] Defendant Trone's name was initially misspelled as "Torne" in Plaintiff's SAC.  *See* Dkt. 11.  However, the Court has since been informed that the correct spelling is "Trone."  Dkt. 24-7.

United States District Court
Northern District of California

1    actions, either in state or federal court. *Id.* Also, the Court dismissed without prejudice Plaintiff's

2    claims against the Doe Defendant (i.e., "John Doe"). *Id.*

3           The parties are presently before the Court on Defendants' motion for summary judgment.

4    Dkt. 24. Plaintiff has filed an opposition to Defendants' motion, and Defendants have filed a

5    reply. Dkts. 28, 30. Having read and considered the papers submitted and being fully informed,

6    the Court hereby GRANTS Defendants' motion for summary judgment.

7    **II.    FACTUAL BACKGROUND**

8           **A.    Plaintiff's Version**

9           On December 28, 2016, Defendants Burr, Contreras, and Basnett retaliated against

10   Plaintiff because he would not provide the code to a cell phone (that was found in Plaintiff's cell)

11   by taking or destroying his property without due process, including his "religious material that

12   [he] was mandated to have as he was the Chapel clerk/Inmate Minister teaching classes,"

13   confidential legal documents, canteen food, utensils, hygiene, mail, stationery, linen, clothing and

14   cleaning supplies "without penological interest, but to collusively harass[,] intimidate and retaliate

15   against Plaintiff." Dkt. 11 at 4. Plaintiff filed a grievance related to the aforementioned "illegal

16   taking of [his] state and personal property," and he claims that in retaliation for his filing his

17   grievance, the following occurred: (a) on January 10, 2017, Defendants Burr and Contreras

18   threatened Plaintiff that he would be receiving a rule violation report for an "altered typewriter"

19   (*id.* at 6); (b) on February 3, 2017, Defendant Scruggs forwarded Plaintiff's mail to Defendants

20   Burr and Contreras "and other [Investigative Services Unit ("ISU")] members for [an] alleged

21   screening process" and refused to deliver Plaintiff's mail (*id.* at 6); (c) on February 28, 2017,

22   Defendant Trone lied about Plaintiff's mail being withheld (*id.* at 7); (d) on or around February

23   28, 2017, Defendants Basso, Kauffman, and Chavez retaliated against Plaintiff after he was

24   "interviewed by internal affairs" when Defendant Basso ordered searches and Defendants

25   Kauffman and Chavez conducted searches "at a minimum of 20 times during the process of

26   seeking redress" (*id.* at 9); and (e) in February 2017, Defendant Wright "investigated Plaintiff['s]

27   retaliatory mail claim where [Defendant Wright] reported conflicting and contradictory findings to

28   cover up staff misconduct" (*id.* at 7).

United States District Court
Northern District of California

B.      **Defendants' Version**

1.      **December 28, 2016 Cell Search and Confiscation of Plaintiff's Property**

On December 28, 2016, Defendants Burr, Contreras, and Basnett, who are officers from PBSP's ISU, searched Plaintiff's cell at the request of the Office of Internal Affairs.  Burr Decl. ¶ 6; Basnett Decl. ¶ 8; Shryock Decl., Ex. I ("Pl.'s Dep.") at 66:23-67:8, 77:7-17.  Plaintiff and his cellmate were removed from their cell and placed in holding cells while the offices searched the cell.  Burr Decl. ¶ 8; Pl.'s Dep. at 73:7-10.  While Plaintiff was in the holding cell, he was asked for the code to a cell phone that was found during the search.  Burr Decl. ¶ 6; Pl.'s Dep. at 77:7-15, 78:15-25.  Plaintiff did not provide the code—because Plaintiff claimed that he did not know it.  Burr Decl. ¶ 6; Pl.'s Dep. at 77:7-15, 78:15-25.  Defendants Burr, Contreras, and Basnett then placed all of Plaintiff's and his cellmate's personal property into trash bags and removed them from the building to conduct a more thorough search.  Burr Decl. ¶ 9; Basnett Decl. ¶ 8; Pl.'s Dep. at 92:10-24.

Although Plaintiff's clothing was confiscated, he obtained clothing and shoes from another inmate immediately after the search.  Pl.'s Dep. at 86:21-89:6.  Plaintiff's mattress was not confiscated.  *Id.* at 87:20-88:3, 89:7-90:20, 94:6-15.  And although Plaintiff's bedding was confiscated, he received replacement sheets and a blanket the following day.  *Id.* at 87:20-88:3, 89:7-90:20, 94:6-15.  While Plaintiff's cleaning and hygiene supplies were confiscated, Defendants point out that hygiene and cleaning supplies are issued to inmates by building officers one per week.  Contreras Decl. ¶ 9; Pl.'s Dep. at 39:6-40:10.  Typically, Plaintiff could have requested additional supplies every couple of days from officers who worked in the building in which he was housed.  Contreras Decl. ¶ 9; Pl.'s Dep. at 39:6-40:1.  After the search, Plaintiff requested hygiene and cleaning supplies from the officers assigned to his building.  Pl.'s Dep. at 89:7-91:12.  The officers provided Plaintiff with toilet paper, but they were unable to provide him with other hygiene and cleaning supplies because they were unavailable during the time his property was temporarily confiscated.  *Id.* at 89:7-91:12.  During that time, Plaintiff was able to borrow toothpaste from another inmate, and he was given the opportunity to shower regularly, albeit with water only.  *Id.* at 89:7-14, 95:22-96:1.

3

On January 2, 2017, Plaintiff submitted a California Department of Corrections and Rehabilitation ("CDCR") Form 22 Inmate Request for Interview, Item or Service ("CDCR Form 22"),[3] asking when his property would be returned to him.  Basnett Decl. ¶ 10; Pl.'s Dep. at 100:10-101:11.  In response, Defendant Basnett attempted to give Plaintiff soap, toothpaste, shampoo, and deodorant, but Plaintiff would not take it because it was his cellmate's, not his.  Basnett Decl. ¶ 10; Pl.'s Dep. at 100:10-101:11.  Two days after he submitted the CDCR Form 22, on January 4, 2017, Plaintiff submitted an inmate appeal, log no. PBSP-17-00043, about the confiscation of his personal property, and on January 10, 2017, his property was returned to him.  Spaich Decl. ¶ 12(a), Ex. D at 3; Royal ¶ 9(a), Ex. A at 3; Contreras Decl. ¶ 8 [Rules Violation Report ("RVR") for altered typewriter written on 1/10/2017]; Pl.'s Dep. at 106:23-108:9 [Property returned the same day Plaintiff was told he would receive RVR for altered typewriter]; *see also* Pl.'s Dep. 104:4-12.  Plaintiff's appeal was eventually denied at the third level of review.  Spaich Decl. ¶12(a), Ex. D at 1-3, 5; Royal Decl. ¶ 9(a), Ex. A at 3, 5.

### 2.       February 1, 2017 Withholding of Plaintiff's Mail by Defendant Scruggs

On February 1, 2017, Defendant Scruggs was sorting the mail in preparation to pass it out to inmates, when he saw a flyer advertising "stamps for cash."  Scruggs Decl. ¶ 5.  Because Defendant Scruggs believed that this type of mail might not be allowed under the relevant regulations, he forwarded the flyer to ISU for further review.  Scruggs Decl. ¶¶ 4-6.  The forwarding of such mail to ISU is typical practice at PBSP if an officer is unsure about whether an inmate is allowed to possess certain mail.  Scruggs Decl. ¶¶ 4-6.  Defendant Scruggs claims that he withheld the "stamps for cash" flyer because he believed it was not permitted under the governing regulations, and not for any other reason.  Scruggs Decl. ¶ 9.

Defendant Scruggs told Plaintiff that he forwarded a piece of mail to ISU.  Scruggs Decl. ¶ 5; Pl.'s Dep. at 119:17-120:16.  Plaintiff then requested a CDCR Form 1819—the form that is typically given to an inmate when mail is withheld.  Scruggs Decl. ¶¶ 4, 9; Pl.'s Dep. at 119:17-120:16.  Defendant Scruggs did not provide Plaintiff with the CDCR Form 1819.  Scruggs Decl.

---

[3] CDCR Form 22 allows an inmate to request an interview, item or service from prison staff.  *See* Cal. Code Regs. tit. 15, § 3086.

¶¶ 4, 9; Pl.'s Dep. at 119:17-120:16.  Defendant Scruggs believed that he did not need to provide Plaintiff with that form, because Defendant Scruggs "believed that ISU would issue that form, or direct him to issue it, if they decided [the flyer] was not permitted . . . ."  Scruggs Decl. ¶¶ 4, 9. However, if ISU determined the flyer was permitted, Defendant Scruggs believed that ISU would "simply return the mail to [Plaintiff]."  Scruggs Decl. ¶¶ 4, 9.

Several days later, after receiving a call from Defendant Scruggs about the flyer, Defendant Trone checked ISU's records of CDCR Form 1819s, and asked his ISU colleagues if anyone recalled seeing the flyer or had stopped any of Plaintiff's mail.  Trone Decl. ¶¶ 4-5.  From his investigation, Defendant Trone determined that ISU has no record that any mail was withheld from Plaintiff.  Trone Decl. ¶¶ 4-5.

On February 8, 2017, Plaintiff submitted an inmate appeal, log no. PBSP-17-00305, about his mail being withheld from him and Defendant Scruggs refusing to provide him with a CDCR Form 1819.  Spaich Decl. ¶ 12(b), Ex. E at 1-3, 5; Royal Decl. ¶ 9(b), Ex. B at 5.  This appeal was also subsequently denied at the third level of review.  Spaich Decl. ¶ 12(b), Ex. E at 1-3, 5; Royal Decl. ¶ 9(b), Ex. B at 5.

## III.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

5

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden of proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented some of their own declarations and supporting exhibits, i.e., Defendants Scruggs, Basnett, Contreras, Burr, and Trone (dkts. 24-3 to 24-7) as well as declarations and supporting exhibits from the following: PBSP Appeals Coordinator K. Royal (dkt. 24-1); Acting Chief of the Office of Appeals J. Spaich (dkt. 24-2); and Defendants' attorney, Deputy Attorney General Cassandra Shryock (dkt. 24-8). Meanwhile, Plaintiff has filed his verified SAC (dkt. 11 at 3), his verified declaration (dkt. 28-1 at 2) and exhibits (dkt. 11-1) in opposition to Defendants' motion for summary judgment. The Court will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, Plaintiff has not verified his opposition because he failed to sign it under penalty of perjury. *See* Dkt. 28 at 4.

### B. Exhaustion Under the PLRA

#### 1. Overview

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

1    available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of all "available" remedies is

2    mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and

3    effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40

4    (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably

5    money damages, exhaustion is a prerequisite to suit.  *Booth*, 532 U.S. at 741.  A prisoner "seeking

6    only money damages must complete a prison administrative process that could provide some sort

7    of relief on the complaint stated, but no money." *Id.* at 734.

8        The PLRA requires *proper* exhaustion of administrative remedies.  *Woodford v. Ngo*, 548

9    U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and

10   other critical procedural rules because no adjudicative system can function effectively without

11   imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.  Thus,

12   compliance with prison grievance procedures is required by the PLRA to properly exhaust.  *Id.*

13   The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

14   procedurally defective administrative grievance or appeal." *Id.* at 83.

15       The State of California provides its inmates and parolees the right to appeal

16   administratively "any departmental decision, action, condition or policy perceived by those

17   individuals as adversely affecting their welfare." *See* Cal. Code Regs. tit. 15, § 3084.1(a).  It also

18   provides its inmates the right to file administrative appeals alleging misconduct by correctional

19   officers. *See id.* § 3084.1(e).

20       In order to exhaust available administrative remedies within this system, a prisoner must

21   proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a

22   CDCR 602 inmate appeal form ("602 appeal"), (3) second level appeal to the institution head or

23   designee, and (4) third level appeal to the Director of the CDCR (i.e., Director's Level).  *See id.*

24   § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the

25   administrative remedies exhaustion requirement under § 1997e(a). *See id.* at 1237-38.  Here,

26   Defendants contend that Plaintiff failed to properly exhaust his available administrative remedies

27   as to all his claims except "(1) his conditions of confinement claim against Defendants Basnett,

28   Contreras, and Burr for the temporary confiscation of his property in December 2016 and January

United States District Court
Northern District of California

2017; (2) his claim against Defendant Scruggs for withholding mail in February 2017; and (3) his retaliation claim against Defendant Scruggs, also for withholding his mail in February 2017." Dkt. 30 at 2 (citing Dkt. 24 at 16-17).  Thus, they argue that aside from the aforementioned claims all other claims are unexhausted should be dismissed, including: (1) deliberate indifference claim based on being confined in a holding cell for several hours without food, water, or a restroom; (2) his claim that his property was temporarily confiscated in retaliation for his refusal to provide the passcode to a cell phone; (3) any claims in connection with the issuance of RVRs for possession of a cell phone or possession of altered property; (4) his claims against Defendants Trone and Wright for their involvement in the interviews and investigation into Plaintiff's 602 appeal about his mail allegedly being withheld; and (5) his claims against Defendants Basso, Kauffman, and Chavez for retaliation or any claim arising from the alleged twenty-plus cell searches they ordered or conducted.  Dkt. 24 at 17-19.

### 2.  Summary of Plaintiff's Grievances

Defendants argue that Plaintiff "admittedly only submitted two inmate appeals related to his current claims against Defendants."  *Id.* at 16 (citing Spaich Decl. ¶ 12(a), Ex. D at 1-3, 5, ¶ 12(b), Ex. E at 1-3, 5 ; Royal Decl. ¶ 9(a), Ex. A at 3, 5, ¶ 9(b), Ex. B at 5).

Upon reviewing the record, the Court notes that after December 28, 2016, Plaintiff submitted the following two inmate appeals that were accepted for review and denied at the final level of review.

(1) PBSP-17-00043 - exhausted Plaintiff's claims against Defendants Basnett, Contreras, and Burr concerning the conditions of Plaintiff's confinement while his property was temporarily confiscated in December 2016.  *See* Spaich Decl. ¶12(a), Ex. D at 1-3, 5; Royal Decl. ¶ 9(a), Ex. A at 3, 5; and

(2) PBSP-17-00305 - exhausted Plaintiff's claims against Defendant Scruggs concerning Plaintiff's mail being improperly withheld in February 2017, and that Plaintiff's mail was withheld in retaliation for Plaintiff engaging in a protected activity.  *See* Spaich Decl. ¶ 12(b), Ex. E at 1-3, 5; Royal Decl. ¶ 9(b), Ex. B at 5.

1

2

3    3.    **Analysis**

4        a.    **Deliberate Indifference for Being Confined in Holding Cell**

5            In his SAC, Plaintiff alleges a deliberate indifference claim based on being confined in a

6    holding cell for several hours without food, water, or a restroom.  However, Defendants argue that

7    such a claim is unexhausted because "the one appeal Plaintiff submitted related to the December

8    28, 2016 search, did not put prison officials on notice of the wrong for which Plaintiff now seeks

9    redress."  Dkt. 24 at 17 (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).  The Court

10   agrees with Defendants.  The record shows that in PBSP-17-00043, Plaintiff challenges the

11   "unnecessary and drawn out confiscation of all [his] personal property . . . hygiene[e] [products]

12   and food utensils," which the Court assumes stems from the December 28, 2016 search.  Royal

13   Decl., Ex. A at 3.  The Court has reviewed PBSP-17-00043 and finds that 602 appeal makes no

14   mention of the fact that Plaintiff was allegedly placed in a holding cell for several hours while

15   officers searched his cell.  *See* Spaich Decl. ¶12(a), Ex. D at 1-3, 5; *see also* Royal Decl. ¶ 9(a),

16   Ex. A at 3, 5.  Without this fact, the Court finds that PBSP officials could not have been aware of

17   the wrong for which Plaintiff now seeks redress i.e., his alleged confinement in a holding cell for

18   an extended period of time, and the denial of the aforementioned services while he was confined

19   there—and thus, this claim is unexhausted.  Dkt. 24 at 7.

20            Neither of the two grievances submitted by Plaintiff during the relevant time period

21   addressed his deliberate indifference claim based on being confined in a holding cell.  A grievant

22   must utilize *all* steps of the grievance process made available by the prison so that it can reach the

23   merits of the complaint.  *Woodford*, 548 U.S. at 90.  Here, the record shows that Plaintiff failed to

24   exhaust his administrative remedies as to his deliberate indifference claim based on being confined

25   in a holding cell.  *See Griffin*, 557 F.3d at 1120 (no exhaustion where grievance complaining of

26   upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk,

27   but officials disregarded that order).

        b.    **Confiscation of Property in Retaliation for His Refusal to
                 Provide Cell Phone Passcode**

        Defendants also argue that Plaintiff's claim that his property was temporarily confiscated

    in retaliation for his refusal to provide the cell phone password is "similarly not exhausted,

because Plaintiff did not put prison officials on notice of this alleged wrong." Dkt. 24 at 17.

Defendants argue as follows:

> A grievance does not have to include legal terminology or legal theories in his grievance, unless they were in some way needed to provide notice of the harm being grieved. *See Griffin*, 557 F.3d at 1120. Here, to put prison officials on notice of this claim, Plaintiff did not necessarily need to use the word "retaliation," but he did need to alert prison officials that he had engaged in some protected conduct, and that officials took some action against him because he engaged in protected conduct. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (elements of retaliation claim in prison context).

*Id.* Again, the Court has reviewed PBSP-17-00043, which relates to the confiscation of Plaintiff's property, and it agrees with Defendants. *See* Royal Decl., Ex. A at 3. PBSP-17-00043 makes no mentioned of Plaintiff speaking with the PBSP officials who confiscated his property, or that he believed his property was confiscated because he refused to reveal the cell phone passcode. *See* Royal Decl. ¶ 9(a), Ex. A at 3, 5; Spaich Decl. ¶ 12(a), Ex. D at 1-3, 5. Therefore, Plaintiff did not exhaust any retaliation claim stemming from the December 28, 2016 search.

### c.   Issuance of RVRs for Possession of Cell Phone or Altered Property

Defendants argue that to the extent Plaintiff brings any claims in connection with the issuance of RVRs for possession of a cell phone or altered property, "those claims are similarly not exhausted, because they are no[] mentioned in this, or any other, appeal." Dkt. 24 at 18 (citing Spaich Decl. ¶ 12(a), Ex. D at 1-3, 5, ¶ 12(b), Ex. E at 1-3, 5; Royal Decl. ¶ 9(a), Ex. A at 3, 5, ¶ 9(b), Ex. B at 5). The Court has reviewed both PBSP-17-00043 and PBSP-17-00305. *See* Royal Decl., Exs. A and B. Again, neither 602 appeal mentioned any claims in connection with the issuance of RVRs for possession of a cell phone or altered property. *See id.* Furthermore, PBSP-17-00043 was submitted on January 4, 2017, which was six days *before* the January 10, 2017 RVR for an altered typewriter and therefore PBSP-17-00043 could not have exhausted any claim relating to the January 10, 2017 RVR. *Compare* Royal ¶ 9(a), Ex. A at 3 *with* Contreras Decl. ¶ 8 [RVR for altered typewriter written on 1/10/2017]; *see also* Basnett Decl. ¶ 10; Shryock Decl. Ex I (Pl.'s Dep.) at 100:10-101:11, 106:23-108:9; Spaich Decl. ¶ 12(a), Ex. D at 3. Therefore, Plaintiff did not provide prison officials with sufficient notice of this claim, and it is unexhausted.

   **d.**  **Defendants Trone's and Wright's Involvement in Investigation into PBSP-17-00305 Regarding Plaintiff's Mail Allegedly Being Withheld**

  Defendants argue that Plaintiff did not exhaust his claims against Defendants Trone and Wright for their involvement in the interviews and investigation into PBSP-17-00305, which was regarding Plaintiff's mail allegedly being withheld.  Dkt. 24 at 18.

  Section 3084.2(a)(3) of Title 15 of the California Code of Regulations requires that an inmate

> list all staff member(s) involved and shall describe their involvement in the issue. . . . If the inmate . . . does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in marking a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, §3084.2(a)(3) (repealed June 1, 2020).  The record shows that Plaintiff did not allege any claims against either Defendant Trone or Defendant Wright when Plaintiff first submitted the relevant 602 appeals, PBSP-17-00043 and PBSP-17-00305, because these Defendants' alleged actions of investigating PBSP-17-00305 had not yet occurred.  *See* Spaich Decl. ¶ 12(a), Ex. E at 1, ¶ 12(b), Ex. E at 3, 5; Royal Decl. ¶ 9(b), Ex. B at 1, 3, 5; Pl.'s Dep. at 127:20-128:25, 130:13-25; Trone Decl. ¶ 6.  Even assuming arguendo that Plaintiff had later tried to add any claims against these Defendants to one of the 602 appeals (which he did not), administrative remedies are *not* exhausted as to any new issue or person later named that was not included in the originally submitted appeal.  *See* Cal. Code Regs. tit. 15, § 3084.1(b).  Thus, in order to have exhausted any claims against either Defendant Trone or Defendant Wright, Plaintiff would have been required to submit a *separate* appeal raising any claims about these Defendants' involvement in the investigation of PBSP-17-00305.  Because Plaintiff failed to do so, such claims against Defendants Trone and Wright are also unexhausted.

   **e.**  **Defendants Basso, Kauffman, and Chavez's Acts of Retaliation or Any Claim Arising from Alleged Twenty-Plus Cell Searches They Ordered or Conducted**

  Defendants argue that Plaintiff did not exhaust his claims against Defendants Basso, Kauffman, and Chavez for any acts of retaliation or any claim arising from the alleged twenty-plus cell searches they ordered or conducted.  Dkt. 24 at 19.  Although Plaintiff alleged in the SAC that

United States District Court
Northern District of California

1    his interactions with these Defendants occurred in February 2017, attachments to prior iterations

2    of the complaint and Plaintiff's deposition testimony confirm that these interactions occurred in

3    *April* 2017, which was long after Plaintiff submitted the two 602 appeals relating to this action,

4    PBSP-17-00043 (submitted on January 4, 2017) and PBSP-17-00305 (submitted on February 8,

5    2017).  *See* Dkt. 1 at 24; Pl.'s Dep. at 141:16-25 (Dkt. 29-1 at 2).[4]  Therefore, neither PBSP-17-

6    00043 nor PBSP-17-00305 could have exhausted those claims.

                                  **f.      Summary**

8            In sum, the record in this case demonstrates that Plaintiff had the opportunity and ability to

9    properly exhaust the aforementioned claims, but he failed to do so.  Accordingly, the Court

10   GRANTS Defendants' motion for summary judgment as to these claims, which are subject to

11   dismissal without prejudice.  *See McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002)

12   (proper course in claims dismissed due to failure to exhaust administrative remedies is dismissal

13   without prejudice to refiling).

14           **C.      Remaining Legal Claims**

15           The Court now considers Plaintiff's remaining claims: (1) his conditions of confinement

16   claim against Defendants Basnett, Contreras, and Burr for the temporary confiscation of his

17   property from December 28, 2016 through January 10, 2017; and (2) his claims against Defendant

18   Scruggs for (a) withholding mail in February 2017, and (b) retaliation based on withholding

19   Plaintiff's mail.

20                   **1.      Eighth Amendment Claim Relating to Conditions of Confinement**

21           The Constitution does not mandate comfortable prisons, nor does it permit inhumane ones.

22   *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and

23   the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *See*

24   *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment imposes duties on prison

25   officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter,

26

27           [4] The Court notes that Defendants' attorney erroneously omitted page 141 of Plaintiff's
28   deposition when she initially submitted her declaration, and she later corrected her error by
     submitting a "Notice of Errata" along with the missing page.  *See* Dkt. 29.

                                        12

sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. at 832. A plaintiff alleging that conditions of confinement amount to cruel and unusual punishment prohibited by the Eighth Amendment must satisfy a two-prong test. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). First, a plaintiff must satisfy an objective test showing that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, courts consider the circumstances, nature, and duration of the deprivation. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Second, the plaintiff must show that the prison official inflicted the deprivation with a "sufficiently culpable state of mind," that is, with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. Neither negligence nor gross negligence will constitute deliberate indifference. *See id.* at 835-37 & n.4; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id*.

The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id.* at 732-33; *see, e.g.*, *Hearns v. Terhune*, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions). Also, "[t]he denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citation omitted), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 487 (1995). Finally, inmates have "the right to personal

hygiene supplies such as toothbrushes and soap." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

A heightened pleading standard applies to the subjective prong of Eighth Amendment claims:  the plaintiff must make nonconclusory allegations supporting an inference of unlawful intent. *Alfrey v. United States*, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to *Bivens* Eighth Amendment claim).

Here, Plaintiff claims that he was deprived of clothing, bedding, and cleaning and hygiene supplies for thirteen days—from December 28, 2016 through January 10, 2017.  Contreras Decl. ¶¶ 8-9; Burr Decl. ¶ 9; Basnett Decl. ¶ 8; Pl.'s Dep. at 39:6-40:10, 86:21-91:12, 92:10-24, 94:6-15, 104:4-12, 106:23-108:9.  At the screening stage, the Court found that, liberally construed, these claims were sufficient to proceed.  However, in their motion for summary judgment, Defendants argue that while he "may have been subjected to somewhat harsh conditions, . . . these conditions do not rise to the level of a constitutional violation."  Dkt. 24 at 20.  Defendants have presented evidence that although Plaintiff's clothing was confiscated, he was able to borrow "some pants, [a] blue shirt and some boots" from another inmate in a nearby cell.  Pl.'s Dep. at 86:21-89:6. Defendants have also presented evidence that Plaintiff still had his mattress, and that he was provided "sheets and a blanket" the following day.  *Id.* at 87:20-88:3, 89:7-90:20, 94:6-15. Plaintiff claims his soap, toothpaste, deodorant, shampoo and conditioner, as well as his cleaning supplies were also confiscated for thirteen days.  Contreras Decl. ¶¶ 8-9; Pl.'s Dep. at 39:6-40:10, 104:4-12, 106:23-108:9.  Plaintiff tried to borrow some "hygiene materials" from other inmates, but he was only able to borrow toothpaste because soap had not been available in his building "for about two weeks."  Pl.'s Dep. at 89:7-14, 91:6-8, 95:14-21.  Plaintiff requested cleaning supplies from one of the officers assigned to work in his building, but the building was also out of cleaning supplies and none of the inmates would lend him any cleaning supplies.  *Id.* at 90:13-91:12, 96:2-12.  Plaintiff's floor officer provided Plaintiff with toilet paper that same day.  *Id.* at 89:14-22. Plaintiff was given the opportunity to shower regularly, but "just with water."  *Id.* at 95:22-96:1. Defendants argue that "[a]lthough not ideal, this was a temporary deprivation that did not deny Plaintiff 'the minimal civilized measure of life's necessities.'"  Dkt. 24 at 20-21 (citing *Hudson v.*

United States District Court
Northern District of California

1    *McMillian*, 503 U.S. 1, 9 (1992)).  The Court agrees and finds that Defendants have met their

2    burden and demonstrated the absence of a genuine issue of material fact.  Meanwhile, Plaintiff has

3    failed to set forth specific facts showing that there is a genuine issue for trial.  It is undisputed (and

4    Plaintiff acknowledged at his deposition) that the floor officer supplied him with toilet paper that

5    same day, and that he received sheets and a blanket the very next day, and thus the evidence shows

6    prison officials addressed some of his concerns.  Prisoners may be entitled to appropriate materials

7    to clean their cells depending on the overall squalor of the institution.  *See Hoptowit v. Spellman*,

8    753 F.2d 779, 784 (9th Cir. 1985).  While Plaintiff was not supplied with soap or cleaning

9    supplies, it is undisputed that the reason was because none of these items were available during

10   that time.  Other than presenting his statement that he had no access to cleaning supplies, Plaintiff

11   has failed to present any evidence or allegations that such a denial of cleaning supplies was a

12   sufficiently serious deprivation.  Even assuming the denial of cleaning supplies was sufficiently

13   serious, Plaintiff has not met his burden to show that Defendants' state of mind was sufficiently

14   culpable.  As noted above, neither negligence nor gross negligence will constitute deliberate

15   indifference.  *See Farmer*, 511 U.S. at 835-37 & n.4; *see also Estelle,* 429 U.S. at 106.

16   Defendants cannot be held liable under the Eighth Amendment for denying an inmate humane

17   conditions of confinement unless the standard for criminal recklessness is met, i.e., the prison

18   officials know of and disregard an excessive risk to inmate health or safety.  *See Farmer* 511 U.S.

19   at 837.  Moreover, a heightened pleading standard applies to the subjective prong of Eighth

20   Amendment claims, and Plaintiff must make nonconclusory allegations supporting an inference of

21   unlawful intent.  *See Alfrey*, 276 F.3d at 567-68.  Plaintiff has failed to meet this burden.  While

22   these general allegations sufficed at the screening stage, they are insufficient to defeat summary

23   judgment due to the high standard for Eighth Amendment claims.  The record shows that building

24   officers had access to extra clothing, bedding, as well as some hygiene and cleaning supplies (only

25   toilet paper at that time), and they could issue it to inmates as needed.  Pl.'s Dep. at 89:7-14.  And

26   there is no indication that Defendants prevented Plaintiff from obtaining replacements hygiene and

27   cleaning supplies.  Again, Plaintiff could not get all the replacement hygiene and cleaning supplies

28   he wanted because they were unavailable, not because of the actions of Defendants.  Pl.'s Dep. at

15

89:7-91:12.  Further, after Plaintiff requested that his property be returned to him, Defendant Basnett attempted to give Plaintiff a bar of soap and deodorant, but Plaintiff refused them because they belonged to his cellmate.  Basnett Decl. ¶ 10; Pl.'s Dep. at 100:10-101:11.  Therefore, as to the subjective prong of the Eighth Amendment analysis, Plaintiff has failed to establish Defendants' "deliberate indifference" to the alleged unconstitutional conditions of confinement.  *See Farmer*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 303.

Accordingly, summary judgment is granted to Defendants Basnett, Burr and Contreras on this Eighth Amendment claim.

### 2.    Claims Relating to Defendant Scruggs

#### a.    First Amendment Right to Receive Mail and Fourteenth Amendment Due Process Claims

Prisoners enjoy a First Amendment right to send and receive mail.  *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests."  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners.  *See Thornburgh*, 490 U.S. at 413.

Prisoners also have a liberty interest in the receipt of mail, which triggers procedural due process guarantees.  *Krug v. Lutz*, 329 F.3d 692, 696-967 (9th Cir. 2003).  If prison officials withhold mail, a prisoner has a due process right to receive notice that his incoming mail is being withheld.  *See Frost v. Symington*, 197 F.3d 348, 353-54 (9th Cir. 1999); *see also Prison Legal News v. Cook*, 238 F.3d 1145, 1152-53 (9th Cir. 2001) (holding that due process rights apply to withheld mail where prisoners had constitutionally protected right to receive the mail).  A prisoner also has a due process right to appeal the exclusion of mail to a prison official other than the one who made the initial exclusion decision.  *See Krug*, 329 F.3d at 697-98 & n.5.

Prison officials have a responsibility to forward mail to inmates promptly.  *See Bryan v.*

United States District Court
Northern District of California

*Werner*, 516 F.2d 233, 238 (3d Cir. 1975).  Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).  Any practice or regulation that unduly delays an inmate's incoming mail must be reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. at 89.  But a temporary delay does not violate a prisoner's First Amendment rights.  *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband); *accord Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (content-neutral short-term and sporadic delays in prisoner's receipt of mail did not violate his First Amendment rights) *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (allegations of isolated delay or some other relatively short-term, non-content-based disruption in delivery of inmate mail not enough to state First Amendment claim); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir.) (isolated incident of mail mishandling insufficient to state claim under First Amendment), *cert. denied*, 418 U.S. 910 (1974).

Finally, an isolated incident of mail censorship or interference due to prison officials' "honest error" does not justify relief under section 1983.  *See Lingo v. Boone*, 402 F. Supp. 768, 773 (N.D. Cal. 1975) (prisoner not entitled to monetary relief under § 1983 where prison officials erroneously withheld a single piece of mail on the grounds that it was inflammatory); *see also Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (defendants opened a single piece of legal mail by accident; "[s]uch an isolated incident, without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts, does not give rise to a constitutional violation"); *cf. Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (9th Cir. 1996) (plaintiff stated a claim where he alleged not merely negligent, but deliberate, obstruction of his mail that resulted in mail delivery being delayed for an inordinate amount of time).

Defendants argue that there was no First Amendment violation here because of one isolated incident of alleged mail mishandling by Defendant Scruggs. Dkt. 24 at 22.  The California Code of Regulations provides that "inmates shall not engage actively in a business or profession . . . a business is defined as any revenue generating or profit making activity."  Cal.

17

Code Regs. tit. 15, § 3024(a).  And according to prison regulations, inmate mail may be rejected if it relates to an inmate's business.  *Id.* at § 3024(b).  Here, Defendants present evidence that Defendant Scruggs forwarded a single piece of Plaintiff's mail to ISU in order to determine if Plaintiff was permitted to have the flyer advertising "stamps for cash," because Defendant Scruggs believed the flyer was connected to a business.  Scruggs Decl. ¶¶ 4-6.  Defendant Scruggs had no further involvement with processing this piece of mail.  *Id.* ¶ 6.  At most, Defendants argue that this is merely an isolated error by Defendant Scruggs, and that no evidence exists showing any on-going practice of unjustified censorship occurring, as Plaintiff implies in his SAC.[5]  Thus, Defendants assert that Plaintiff's mail was properly withheld under prison regulations and did not violate Plaintiff's First Amendment rights as a matter of law.  Dkt. 24 at 22-23.

Meanwhile, Plaintiff asserts that Defendants failed to follow prison regulations regarding withheld mail.  Dkt. 11 at 6-7.  He claims that under the regulations, prison staff like Defendant Scruggs "knew or should have known that established policy 3136(a)[6] mandated that plaintiff was

---

[5] To the extent Plaintiff claims that additional mail was mishandled after February 2017 incident involving Defendant Scruggs, such a claim is unexhausted.  Further, Plaintiff does not connect any other Defendant to these additional mail issues.  In order to recover under section 1983, Plaintiff must present evidence that Defendants were personally involved in a constitutional deprivation.  *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012), *cert. denied*, 571 U.S. 819 (2013).  But Plaintiff fails to present any such evidence.  The record shows that only Defendant Scruggs forwarded the "stamps for cash" flyer to ISU, and the other Defendants were not part of processing incoming mail at the institution.  Burr Decl. ¶ 14.  Therefore, the Court will only consider Plaintiff's allegations involving Defendant Scruggs' withholding of the flyer advertising "cash for stamps."

[6] Section 3136(a) of Title 15 of the California Code of Regulations, "Disapproval of Inmate Mail," states as follows:

> Disapproval of inmate mail that is in clear violation of CCR sections 3006 or 3135 shall be referred to staff not below the level of Captain for determination and appropriate action.  Disapproval of inmate mail that is not in clear violation of CCR sections 3006 or 3135 shall be referred to the Warden, but not lower than the Chief Deputy Warden, for determination and appropriate action.  When incoming or outgoing mail, packages, or publications addressed to or being sent by an inmate are withheld or disallowed, the inmate shall be informed via CDCR Form 1819 (Rev. 01/16), Notification of Disapproval-Mail/Packages/Publications, of the reason, disposition, name of official disallowing the mail/package/publication, and the name of the official to whom a grievance can be directed.

Cal. Code Regs. tit. 15, § 3136(a).

to be given a CDCR [Form] 1819, documenting that he was forwarding plaintiff['s] mail to ISU." *Id.* at 7. However, Plaintiff claims that he "submitted a CDCR 22 form and asked [Defendant Scruggs] about [the] CDCR 1819 form." *Id.* In response to the CDCR Form 22, Defendant Scruggs stated that he "contacted . . . [Defendant] Trone, [who] stated [the withheld mail] ha[d] been forwarded to ISU for processing." *Id.*; Dkt. 11-1 at 8. In essence, Plaintiff seems to claim that Defendants failed to follow the aforementioned prison regulations, thereby, violating his due process rights. *See id.*

The Court notes that in response to the motion for summary judgment, Plaintiff makes no challenges to the prison regulation prohibiting mail relating to an inmate's business. *See* Dkt. 28-1 at 1. Rather, Plaintiff's main contention is that Defendant Scruggs failed to comply with prison regulations when he withheld Plaintiff's mail "without issuing [the] CDCR 1918 mandated form when any mail is being withheld." *Id.* Defendants acknowledge that "[a]lthough [Plaintiff] did not receive a CDCR Form 1819 as he requested, Defendant Scruggs informed Plaintiff verbally and in writing that he forwarded [Plaintiff's] mail to ISU for processing. Dkt. 24 at 24 (citing Scruggs Decl. ¶¶ 5, 7, Ex. G; Pl.'s Dep. at 119:17-120:16). Moreover, Plaintiff had the opportunity to, and did, challenge Defendant Scruggs's decision to withhold his mail through the inmate appeals process. *Id.* at 24-25 (citing Spaich Decl. ¶ 12(b), Ex. E at 3, 5; Royal Decl. ¶ 9(b), Ex. B at 3, 5). And his appeal was evaluated by a prison official other than person who seized the mail at issue. *Id.* at 25 (citing Pl.'s Dep. at 127:20-128:25, 130:13-25; Trone Decl. ¶ 6; *see also* Spaich Decl. ¶ 12(a), Ex. D at 1; Royal Decl. ¶ 9(b), Ex. B at 1). Thus, Defendants argue that the aforementioned actions satisfied the constitutional requirements of due process, i.e., notice of the disallowed material and the ability to appeal that decision to a different official. *Id.*

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's claim relating to his First Amendment right to receive mail. *See Celotex Corp*., 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

United States District Court
Northern District of California

1   The only dispute is what process was due to Plaintiff in the withholding of his mail.  Under

2   Ninth Circuit precedent, Plaintiff has a due process right to receive notice that his incoming mail is

3   being withheld, *see Frost*, 197 F.3d at 353-54, and a right to appeal the exclusion of mail to a

4   prison official other than the one who made the initial exclusion decision, *see Krug*, 329 F.3d at

5   697-98 & n.5.  As to the first procedural requirement, the undisputed facts show that Plaintiff

6   received oral and written notice from Defendant Scruggs notice that his mail was being withheld.

7   Secondly, the undisputed facts show that Plaintiff was afforded the right to appeal, and he did in

8   fact appeal the decision to other prison officials.  Therefore, the undisputed facts show that

9   Plaintiff was afforded constitutionally adequate procedural due process in the withholding of the

10  mail at issue.  As such, even if it were true that Defendant Scruggs failed to comply with the

11  prison's procedure of issuing a CDCR Form 1819 after withholding Plaintiff's mail, the Court is

12  not persuaded that the failure to do so gives rise to a due process liability.  *See, e.g.*, *Walker v.*

13  *Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (in a disciplinary proceeding, Due Process Clause

14  only requires prisoners be afforded those procedures mandated by *Wolff v. McDonnell*, 418 U.S.

15  539 (1974), and its progeny, and does not require that prisons comply with its own, more generous

16  procedures); *see also Rogers v. Okin*, 738 F.2d 1, 8 (1st Cir. 1984) ("if state procedures rise above

17  the floor set by the due process clause, a state could fail to follow its own procedures yet still

18  provide sufficient process to survive constitutional scrutiny").

19  Accordingly, Defendant Scruggs is entitled to judgment as a matter of law on Plaintiff's

20  First and Fourteenth Amendment claims.  *Celotex Corp.,* 477 U.S. at 323.

21  **b.**      **Retaliation Claim Based on Withholding Mail**

22  Plaintiff alleges that Defendant Scruggs's aforementioned actions of withholding mail in

23  February 2017 was in retaliation against Plaintiff for exercising his First Amendment rights.

24  "Within the prison context, a viable claim of First Amendment retaliation entails five basic

25  elements:  (1) An assertion that a state actor took some adverse action against an inmate

26  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

27  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

28  correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Defendants argue that there is an absence of evidence of a causal connection that the withholding of Plaintiff's mail by Defendant Scruggs was motivated because of Plaintiff's protected conduct, and they also argue that there were legitimate reasons for withholding Plaintiff's mail. Dkt. 24 at 23. Defendants state as follows:

> Assuming that forwarding the "stamps for cash" flyer to ISU was an "adverse action," this action was not done because Plaintiff had submitted an inmate appeal one month earlier, and it did advance a legitimate penological interest. Scruggs Decl. ¶¶ 5-9. Defendant Scruggs only forwarded the flyer to ISU because he believed that it was not permitted under the governing regulations. Scruggs Decl. ¶ 9. Because Defendant Scruggs forwarded the mail to ISU to see whether the mail was permitted, consistent with the regulations, his actions also served a legitimate penological purpose.

*Id.*

To raise a triable issue as to motive, a plaintiff must offer evidence that the defendants knew about the protected conduct. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). In addition, the plaintiff must show "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). To survive summary judgment without direct evidence, therefore, the plaintiff must "present circumstantial evidence of motive, which usually includes:

21

1   (1) proximity in time between protected speech and the alleged retaliation; (2) [that] the

2   [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered

3   by the [defendant] for the adverse . . . action were false and pretextual." *McCollum*, 647 F.3d at

4   882 (internal quotation marks and citation omitted).

5            Here, the Court finds that Plaintiff's retaliation claim against Defendant Scruggs fails

6   because of an absence of evidence of retaliatory motive. *See id.* Plaintiff does not allege that

7   Defendant Scruggs had knowledge of Plaintiff's previous grievances or lawsuits. *See* Dkt. 11.

8   Instead, it seems that Plaintiff claims that Defendant Scruggs's actions were "to cover up,

9   retaliation and harass [Plaintiff]" because "[he] did not give them the code to a cell phone that he

10  never had possession of." Dkt. 11 at 8. However, there is nothing in the record which indicates

11  that on February 1, 2017, the date Defendant Scruggs withheld Plaintiff's mail, Defendant Scruggs

12  had any knowledge about the cell search and property confiscation incident more than a month

13  prior, on December 28, 2016, involving Defendants Burr, Contreras, and Basnett. Second, there is

14  no evidence that Defendant Scruggs expressed opposition to any protected conduct by Plaintiff.

15  Third, as mentioned above, Plaintiff offers no evidence that Defendant Scruggs's reason for

16  withholding Plaintiff's mail was false or pretextual (i.e., Defendant Scruggs claims he withheld

17  the flyer advertising "stamps for cash" because he believed the flyer was connected to an inmate

18  business in violation of prison regulations). *See Wood*, 753 F.3d at 904-05 (speculation on

19  defendant's motive is insufficient to defeat summary judgment). Accordingly, Defendant Scruggs

20  is entitled to judgment as a matter of law for this retaliation claim.

21                      **3.   Punitive Damages Claim**

22           Finally, the dismissal of Plaintiff's claim for punitive damages is in order, as punitive

23  damages may be awarded in a section 1983 suit only "when the defendant's conduct is shown to

24  be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

25  federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is no

26  indication whatsoever that Defendants' alleged wrongdoing rose to this requisite high level of

27  culpability. Accordingly, Plaintiff's claim for punitive damages is DISMISSED.

28

United States District Court
Northern District of California

## IV.    CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.        Defendants' motion for summary judgment is GRANTED as to all claims.[7]  Dkt. 24.  Specifically, the Court has GRANTED Defendants' motion for summary judgment on the merits as to Plaintiff's following claims: (1) his conditions of confinement claim against Defendants Basnett, Contreras, and Burr for the temporary confiscation of his property from December 28, 2016 through January 10, 2017; and (2) his claims against Defendant Scruggs for: (a) withholding mail in February 2017, and (b) retaliation based on withholding Plaintiff's mail. Plaintiff's remaining unexhausted claims, as listed above, are DISMISSED without prejudice to refiling after exhausting California's prison administrative process.  *See McKinney*, 311 F.3d at 1200-01.

2.        Plaintiff's claim for punitive damages is DISMISSED.

3.        The Clerk of the Court shall terminate all pending motions and close the file.

4.        This Order terminates Docket No. 24.

IT IS SO ORDERED.

Dated: August 5, 2020

YVONNE GONZALEZ ROGERS
United States District Judge

---

[7] The Court's finding that Defendants are entitled to summary judgment as to Plaintiff's claims (based on the failure to exhaust administrative remedies as to some of the claims and on the merits as to the remaining claims, as explained above) obviates the need to address Defendants' alternative arguments in their dispositive motion.